UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION AT LONDON**

RITA LYNN CONN,                    )
                                   )
        Plaintiff,                 )
                                   )              Case No.
v.                                 )          6:18-cv-009-JMH
                                   )
NANCY C. BERRYHILL,                )         **MEMORANDUM OPINION**
ACTING COMMISSIONER OF SOCIAL      )            **AND ORDER**
SECURITY,                          )
                                   )
        Defendant.                 )

                        ***

        Plaintiff Rita Lynn Conn brings this matter under 42 U.S.C.

§ 405(g) seeking judicial review of an administrative decision of

the Acting Commissioner of Social Security.   The Court, having

reviewed the record and the cross-motions for summary judgment

filed by the parties, will **REVERSE** and **REMAND** the Commissioner's

decision because the ALJ's finding pertaining to the severity of

Conn's gastrointestinal impairments is not supported by

substantial evidence and the ALJ committed reversible error at

multiple steps of the sequential evaluation.

## I.    Standard for Determining Disability

        Under the Social Security Act, a disability is defined as

"inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). In determining disability, an Administrative Law Judge ("ALJ") uses a five-step analysis. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform past relevant work; and, if necessary, Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *Id.*; *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## II. Procedural and Factual History

Conn initially filed an application for Title XVI Supplemental Social Security Insurance Benefits in August 2014, alleging disability as of July 1, 2014. [TR 171]. Conn alleged disability due to incontinence, stress, nerves, high blood pressure, thyroid issues, diabetes, and heart problems. [TR 213].

Prior to her current application for disability benefits, Conn was treated by Dr. John Michael Watts, her primary care physician, beginning in late 2013 for numerous physical and mental health complaints including chronic pain and numbness, frequent bowel movements, incontinence, abdominal cramping, headaches, hand

tremors, fatigue, joint pain, diabetes, depression, and anxiety, among other ailments. [TR 318-21, 353-54, 383-84, 445-56]. Dr. Watts opined that Conn was disabled. [TR 359, 373].

Due to complaints of abdominal cramping, incontinence, and frequent bowel movements, Dr. Watts referred Conn to Dr. Morris Beebe, a gastroenterologist. [TR 322-29]. An EGD and colonoscopy were performed on Conn. [TR 325]. These tests revealed a small hiatal hernia, mild nonerosive gastritis, diverticulosis, and a rectal polyp. [*Id.*].

After Conn filed her application for benefits, Dr. Robert Nold performed a consultative evaluation of Conn. [TR 344-50]. During the consultative examination, Conn reported incontinence of both the bowel and bladder due to stress, anxiety issues, high blood pressure, low thyroid, type 2 diabetes, and heart problems. [TR 344]. Based on the history provided by Conn, limited medical records, and a physical examination, Dr. Nold reported that Conn had a normal range of motion in the lower back. [TR 347]. Dr. Nold also reported that Conn may have difficulty squatting, standing, stooping, and kneeling due to osteoarthritis in her right knee. [*Id.*]. Additionally, Nold noted that "[f]ine manipulation would be difficult because of her tremor involving her hands and forearms." [*Id.*]. Nold stated that Conn's problems with bowel and bladder incontinence had not been fully explored but noted that Conn had a colonoscopy in early 2014 that showed one polyp

and the possibility of irritable bowel syndrome and Crohn's disease. [*Id.*]. Nold also reviewed Conn's history of chest pain and noted that she had a heart catheterization in 2013 and was placed on medication for coronary artery disease. [*Id.*]. Finally, Nold mentioned that Conn's high blood pressure, type 2 diabetes, and migraine headaches are managed with medication. [*Id.*].

On October 17, 2014, Dr. Marvin Bittinger, a state agency physician, opined that Conn had exertional limitations but that she could occasionally lift and carry twenty pounds and could frequently carry ten pounds. [TR 76-78]. Additionally, Bittinger stated that Conn could stand and walk, with normal breaks, for a total of about six hours in an eight-hour workday. [*Id.*]. Finally, Bittinger found that Conn could occasionally climb ramps and stairs, kneel, crouch, and crawl and that Conn could frequently balance and stoop. [*Id.*].

Subsequently, on May 4, 2015, Dr. William Waltrip performed a consultative evaluation of Conn. [TR 386-92]. Conn reported symptoms and medical disorders similar to those reported at her previous examination with Dr. Nold, including, incontinence, high blood pressure, stress and nerve problems, thyroid problems, diabetes, and heart problems. [TR 386]. Dr. Waltrip noted that Conn reported bowel incontinence and that she has diarrhea immediately after eating. [*Id.*].

After his physical examination and review of Conn's medical history, Dr. Waltrip observed that Conn had problems with nervous disorder and stress that had been previously evaluated. [TR 389]. Additionally, Waltrip observed that Conn has a gastrocolic reflex. [*Id.*]. Furthermore, Dr. Waltrip observed that Conn was "very minimally limited in her ability to walk, stand or sit." [Id.]. Waltrip stated that Conn should be able to lift objects of 25-30 pounds without limitation, that Conn had good strength of grip, and could perform fine and gross manipulations. [Id.]. Finally, Waltrip noted that Conn had no limitation of hearing, seeing, or speaking. [*Id.*].

In June 2015, Dr. Donna Sadler, a state agency physician, made findings that were analogous to the previous findings of Dr. Bittinger. [TR 96-100]. Sadler opined that Conn could stand or walk, with normal breaks, for a total of four hours and that Conn could sit, with normal breaks for about six hours in an eight-hour workday. [TR 97]. Finally, Dr. Sadler found that Conn had unlimited balance but that she could only crouch occasionally. [*Id.*].

Finally, the record was reviewed by two state agency health consultants, Drs. Maxine Ruddock and Alex Guerrero. [TR 74-75, 94-95]. The state agency consultants observed that Conn had anxiety in the context of fear of soiling herself. [TR 75, 95].

Even so, the consultants both found that Conn had non-severe mental impairment. [TR 74-75, 94-95].

Conn's claim for benefits was denied initially and upon reconsideration. [TR 79, 101]. Subsequently, Conn pursued her claims at an administrative hearing in front of ALJ Jonathan Leiner on July 25, 2016. [TR 33-68]. Conn was represented by an attorney at the hearing.

At the hearing, Conn testified that her "bowels" were her most serious medical issue. [TR 38]. Conn testified that she had lost approximately ten pounds. [TR 39]. Conn reported that her gastrointestinal issues led to frequent bowel movements and required her to use the restroom ten times per day on average. [*Id.*]. Additionally, Conn reported issues with incontinence and reported that Dr. Watts had prescribed Amodil for her symptoms. [TR 40-41]. Furthermore, Conn reported that she used over-the-counter medications and had tried dieting to relieve her symptoms. [*Id.*].

In addition to gastrointestinal issues, Conn testified about other medical issues such as radiating neck pain, fibromyalgia, tremors in her hands and arms, arthritis, heart issues, migraines, and sleep apnea, among other conditions and symptoms. [TR 42-49, 54-62].

Finally, Jane Hall, a vocational expert, also testified at the hearing. [TR 62-67]. Hall testified that Conn was approaching

retirement age, had a high-school education, and had worked as a cardiac monitor at a regional hospital. [TR 63]. Hall explained that the position of a cardiac monitor is a sedentary position and is considered skilled. [*Id.*]. Hall testified that the Dictionary of Occupational Titles ("DOT") Code for the position of cardiac monitor is 078.365-010. [*Id.*].

The ALJ presented two hypotheticals to the vocational expert. First, the ALJ asked the vocational expert to assume a hypothetical individual of Conn's age, education, and work experience, with limitations such as only being able to walk or stand four to eight hours, only being able to sit four hours, and migraine headaches lasting between two to eight hours per day two days per week. [TR 64-65]. The vocational expert responded that "[t]his individual could not complete a normal workweek." [TR 65].

Second, the ALJ asked the vocational expert to assume a hypothetical individual of Conn's age, education, and work experience, who can stand and walk for four hours in an eight-hour workday, can sit for six hours in an eight-hour workday, and can perform frequent, but not repetitive bilateral feeling and handling, among other factors. [TR 65-66]. The vocational expert testified that this hypothetical individual could perform past work. [TR 66].

ALJ Leiner issued an unfavorable decision on January 4, 2017, denying Conn's claims and finding that she was not disabled. [TR 18-27].

At the first step of the sequential analysis, the ALJ found that Conn had not engaged in substantial gainful activity since July 21, 2014. [TR 20].

At step two, the ALJ found that Conn suffered from the following severe impairments: neck and back disorders, tremor, knee disorder, diabetes mellitus, migraine headaches, and obesity. [TR 20-23]. The ALJ determined that Conn did not suffer from any severe gastrointestinal impairment, cardiac impairment, obstructive sleep apnea, or mental impairment. [TR 22]. Pertaining to Conn's gastrointestinal impairment, specifically bowel incontinence, the ALJ found that this impairment was not severe because the documentary record shows no evidence of weight loss. [TR 22]. Additionally, the ALJ considered the four broad functional areas for evaluating mental disorders and found that Conn's mental impairments resulted in no more than a mild limitation and no episodes of decompensation. [TR 22-23].

At step three, the ALJ concluded that Conn did not experience any impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. [TR 23]. In making this determination, the ALJ found that Conn's neck, back, and knee

disorders failed to meet or equal the severity of any of the listing requirements, particularly Section 1.02 and 1.04. [*Id.*]. Additionally, the ALJ found the neither Conn's migraine headaches nor her tremors met or equaled the severity of any of the listing requirements, specifically Section 11.01. [*Id.*]. Finally, the ALJ concluded that Conn's obesity, viewed alone and in combination, failed to meet the listing requirements and that endocrine disorders, such as diabetes mellitus, were to be evaluated based on the results those disorders had on other body systems. [*Id.*].

At step four, the ALJ found that Conn retained the residual function capacity to perform a broad range of light work. [TR 23]. The ALJ explained that Conn can lift twenty pounds occasionally and ten pounds regularly, can stand and walk for four hours in an eight-hour workday, can sit for six hours in an eight-hour workday, and can perform frequent bilateral feeling and handling. [TR 23-24]. The ALJ noted that Conn testified that her worst impairment were gastrointestinal issues but explained that Conn had not required additional specialized medical treatment. [TR 24]. The ALJ also noted Conn's radiating neck pain and inability to walk for long periods of time. [*Id.*].

Even so, the ALJ found "that the claimant's medically determinable impairments cannot reasonably be expected to impose symptoms of the intensity, persistence, and limiting effects as [Conn] alleges." [TR 24]. Additionally, the ALJ found that Conn's

subjective allegations and hearing testimony were unpersuasive. [TR 25]. Again, the ALJ emphasized that Conn's lack of weight loss appeared inconsistent with her asserted debilitating diarrhea and bowel incontinence. [*Id.*]. The ALJ appears to have assigned controlling weight to the opinions of the two state agency physicians, Dr. Nold and Dr. Waltrip. [TR 26-27]. As a result, the ALJ concluded that Conn could perform past relevant work as a cardiac monitor and did not proceed to step five. [TR 27].

The Appeals Council denied review of Conn's claim. [TR 1-5]. Having exhausted her administrative remedies, Conn pursued judicial review of the Commissioner's decision by filing this action on January 6, 2018. [DE 2]. Pursuant to the Court's Standing Scheduling Order [DE 10], Conn moved for summary judgment on June 3, 2018, [DE 11] and the Commissioner moved for summary judgment on June 29, 2018 [DE 13]. As a result, this matter is ripe for review.

### III. Standard of Review

When reviewing the ALJ's ruling, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec*, 693 F.3d 709, 713 (6th Cir. 2012). This Court determines only whether the ALJ's ruling is supported by substantial evidence and was made pursuant to proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence"

is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court is to affirm the decision, provided it is supported by substantial evidence, even if this Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Even so, the existence of substantial evidence supporting the Commissioner's decision cannot excuse failure of an ALJ to follow a mandatory regulation that "is intended to confer a procedural protection" for the claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543, 546-47 (6th Cir. 2004). "To hold otherwise ... would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.* at 546; *see also Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to follow agency rules and regulations 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009))).

Finally, the ALJ must provide a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). This requirement is "necessary in order to

facilitate effective and meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).

## IV. Analysis

Conn raises three main issues in this action. [DE 11 at 1-2, 5-13, Page ID # 601-02, 605-13]. First, Conn claims that the ALJ erred in evaluating the severity her digestive disorder and mental health conditions. Second, Conn asserts that the ALJ erred by not addressing the opinion of her primary care provider, Dr. Watts. Third, Conn claims that the ALJ erred in finding that she had the residual function capacity to return to her past relevant work.

## A. Whether the ALJ Erred in Evaluating the Severity of Conn's Gastrointestinal and Mental Health Impairments

First, Conn asserts that the ALJ erred by failing to adequately consider the severity of her gastrointestinal and mental health impairments. [See DE 11 at 6, Page ID # 606].

At step two of the sequential analysis, establishing a severe impairment is a *de minimis* hurdle. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). An impairment is considered severe unless "it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89–90 (6th Cir. 1985)).

**(1)  Whether substantial evidence supports the ALJ's finding that Conn's gastrointestinal impairments were not severe**

In finding that Conn had no severe gastrointestinal issue, the ALJ stated:

> The record evidence fails in particular to demonstrate that the claimant experiences any "severe" gastro-intestinal impairment. The claimant has emphasized that she experiences uncontrolled bowel incontinence but the documentary record to the contrary fails to show any loss of weight. . . . The undersigned finds from the foregoing that her asserted gastro-intestinal impairment is not "severe."

[TR 22].

Conn claims that the ALJ's finding is in error and ignores relevant record evidence to the contrary.  Alternatively, the Commissioner asserts that Conn's challenge "is largely an academic question because the ALJ found that the Plaintiff had some severe impairments and continued in the sequential evaluation."  [DE 13 at 8, Page Id # 623].

But the Commissioner's response misses the point.  Conn's initial argument is not that the ALJ failed to properly analyze her gastrointestinal impairments when considering residual function capacity at step four.  Instead, Conn argues that the ALJ's consideration of her gastrointestinal impairments at step two is not adequately articulated and therefore is not supported by substantial evidence.

Here, the ALJ's perfunctory finding that Conn's gastrointestinal impairments were not severe solely because she

had not lost weight is not supported by substantial evidence in the record. Conn's lack of weight loss is the sole reason that the ALJ provided in concluding that Conn's gastrointestinal health problems were not severe impairments. But it is unclear how Conn's lack of weight loss, standing alone, indicates that her gastrointestinal health issues are not severe.

At the administrative hearing, Conn reported that gastrointestinal problems were her most serious impairment. [TR 38]. Conn also reported that she has frequent bowel movements and that sometimes she must use the restroom up to ten times per day for as much as twenty minutes per visit. [TR 39].

Additionally, the objective medical evidence reflects that Conn has been treated for various gastro-intestinal issues and symptoms. For example, medical records indicate that Conn regularly suffered from vomiting, nausea, diarrhea, stomach cramping, and incontinence. [*See, e.g.*, TR 318-19, 322-24, 326-29, 354, 359]. Additionally, Conn was treated by Dr. Morris Beebe, a gastroenterologist. [TR 322-29]. Moreover, results from an EGD and colonoscopy revealed a small hiatal hernia, mild nonerosive gastritis, diverticulosis, and a rectal polyp. [TR 325].

Ultimately, both the objective medical evidence and Conn's testimony suggest that Conn's gastrointestinal issues may be more than slight abnormalities that minimally effect work ability and

support a finding that Conn's gastrointestinal issues may constitute severe impairments. *See Higgs*, 880 F.2d at 862.

Of course, the Commissioner is correct that once the ALJ found at least one severe impairment, the ALJ was then required to consider all of Conn's impairments—severe and non-severe—at step four. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5 (July 2, 1996)).

The problem here is that that ALJ's analysis at step four simply reiterates the ALJ's finding at step two. [*Compare* TR 22, *with* TR 25]. At step four, the ALJ reiterated Conn's gastrointestinal symptoms and then again concluded that Conn's "asserted modest weight loss appears inconsistent with her asserted debilitating diarrhea and even this moderate weight loss appears unsupported [by the record]." [TR 25].

Thus, the ALJ considered Conn's non-severe gastrointestinal impairments at step four but it is still unclear how Conn's lack of weight loss justifies disregarding other testimony and objective medical evidence in the record. It seems at least plausible that someone could have severe gastrointestinal issues and not experience substantial weight loss. Of course, that may not be the case. But here, none of the medical experts discussed Conn's weight when assessing her gastrointestinal issues. Additionally, the listing standards for digestive issues do

discuss weight loss, but weight loss is simply discussed as one potential symptom, not as a dispositive factor. *See generally*, 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 5.00E.(2), G., 5.06B.(5), 5.08. As a result, if there is medical evidence or research that suggests that severe gastrointestinal health problems are always accompanied by weight loss, then the ALJ needs to cite to that evidence to support his conclusion.

Ultimately, the ALJ's conclusion does not adequately explain how or why the ALJ found that Conn's gastrointestinal issues were not severe, making proper review impossible. Without more explanation, the ALJ's finding that Conn's gastrointestinal impairments are not severe is not supported by substantial evidence, justifying remand.

Of course, remand does not necessitate a finding that Conn's gastrointestinal impairments are severe. The Commissioner, not this Court, is the ultimate fact finder on the issue of disability. 42 U.S.C. § 405(g); *see also INS v. Orlando Ventura*, 537 U.S. 12, 17-18 (2002). It is the ALJ's explanation that is not supported by substantial evidence, not necessarily the ALJ's ultimate finding. Upon further consideration, the ALJ may properly conclude that Conn's gastrointestinal impairments are not severe. Still, in so finding, the ALJ must provide enough explanation and detailed analysis to demonstrate that his decision is supported by substantial evidence from the record.

16

**(2) Severity of Conn's mental health impairments**

Conn also claims that the ALJ erred by failing to consider her mental conditions as severe impairments. [DE 11 at 7, Page Id # 607]. Conn cites to medical evidence in the treatment records that demonstrate that Conn had complained of mental health issues, took prescription medications Celexa and Buspar, and had been referred to a psychiatrist. [*Id.; see, e.g.*, TR 320, 351-59].

On the Disability Report Form, Conn listed "stress" and "nerves" as mental conditions that limited her ability to work. [TR 212]. It does not appear that Conn's mental health impairments were discussed at the administrative hearing.

Here, whether the ALJ's finding that Conn had no severe mental health impairments is supported by substantial evidence is a closer call. When assessing the severity of Conn's mental health impairments, the ALJ said:

> The record evidence fails to demonstrate that the claimant experiences any "severe" mental impairment. The documentary record presents essentially minimal findings to substantiate the presence of any "severe" mental impairment. The claimant has never pursued any course of formal mental health treatment for any asserted "severe" impairment.

[TR 22].

Additionally, when assessing residual function capacity at step four, the ALJ noted that Conn conceded "that she now experienced only an occasional migraine headache when she was stressed." [TR 25]. Furthermore, the ALJ considered the opinions

17

of the state agency mental health consultants "who assessed the claimant with no 'severe' mental impairment," and whose opinions "appear[] consistent with the record evidence." [TR 26].

The ALJ's analysis pertaining to the severity of Conn's mental health impairments is more developed and is supported by substantial evidence. Of course, Conn correctly points out that she was diagnosed with anxiety and depression by her primary care physician, Dr. Watts. [See, e.g., TR 320, 359]. Even so, her primary care physician did not list anxiety as one of Conn's major health issues and stated that while Conn suffers from depression, it is not her primary limiting health issue. [See TR 359]. Additionally, while the record indicates that Conn was referred to a psychiatrist and treated for mental health conditions, it does not indicate that these conditions are severe or evidence a longitudinal history of mental health treatment.

Additionally, mental health issues were not raised during the administrative hearing and the challenge to the ALJ's mental health analysis at step two is only afforded a single paragraph in Conn's motion for summary judgment. [See TR 18-27; DE 11 at 7, Page ID # 607].

Furthermore, even though the ALJ found that Conn did not suffer from a severe mental health impairment, the ALJ considered Conn's non-severe mental health conditions at step four when considering residual function capacity. In fact, the ALJ

considered the opinions of two state agency mental health consultants and the record evidence in concluding that Conn did not suffer from a severe mental health impairment.

Ultimately, the record is replete with evidence that Conn may suffer from a severe gastrointestinal impairment, but that is not the case pertaining to Conn's mental health impairments. Furthermore, the ALJ properly considered Conn's non-severe mental health impairments at step four of the sequential analysis. Additionally, in making his decision, the ALJ considered the severity of Conn's stress-induced migraine headaches and opinion evidence from state agency consultants. As a result, the ALJ's conclusion that Conn did not suffer from a severe mental health impairment is supported by substantial evidence.

**B. Whether ALJ Failed to Properly Consider Opinion of Dr. Watts**

Second, Conn argues that the ALJ erred by failing to consider the opinion of Conn's primary care physician, Dr. Watts. In a handwritten letter dated September 23, 2014, Dr. Watts listed Conn's major health issues as obstructive sleep apnea, diabetic gastroparesis, arthritis of the knees, obesity, and diabetes.[1] [TR 359]. Dr. Watts also listed depression as a medical condition but

---

[1] As Conn acknowledges, Dr. Watts's handwritten letter is difficult to read, and it appears that Dr. Watts uses some medical abbreviations. Still, while the Court has paraphrased portions of the letter, the letter is not so illegible that it is impossible to comprehend.

indicated that depression was not Conn's primary limiting issue. [*Id.*].  Dr. Watts opined that Conn had multiple factor relating to her disability.  [*Id.*].  Furthermore, Dr. Watts also appears to have opined that Conn was unable to work and had a continuing disability on another occasion.  [TR 373].

Alternatively, the Commissioner acknowledges that the ALJ's written decision did not specifically discuss Dr. Watts's opinions but argues that the ALJ considered the entire record in making his decision, including the opinions of Dr. Watts.  [See DE 13 at 10-11, Page Id # 624-25].  In support of this argument, the Commissioner cites *Simons v. Barnhart* for the proposition that an ALJ's failure to cite to specific evidence does not indicate that the evidence was not considered.  114 F. App'x 727, 733 (6th Cir. 2004).

Of course, the Commissioner is correct that the ALJ is not required to cite to all evidence that was submitted in the record. Still, there is a substantial difference between an ALJ's failure to mention all the findings of a medical professional and an ALJ's failure to demonstrate that they even considered evidence provided by a medical professional.

Here, the Commissioner asks the Court to take the ALJ at his word and assume that when the ALJ says that he considered all the record evidence that he also considered the evidence and opinions of Dr. Watts.  But the law requires the ALJ to provide a discussion

of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A). The ALJ must say something more than nothing to allow this Court to conduct meaningful review of the decision and findings.

Additionally, the ALJ's failure to consider the medical opinions of Dr. Watts violates the treating source rule and justifies remand.

As an initial matter, the treating source rule has been recently modified and the controlling weight standard has been rescinded. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5845 (Jan. 18, 2017) (effective March 27, 2017). Even so, this rule change only applies to more recent cases. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017). While the parties do not explicitly discuss the treating source rule, Conn's application for disability benefits was filed in before March 27, 2017; therefore, the treating source rule applies to this decision.

Under the treating source rule, medical opinions from a treating source are given more weight than opinions from a non-treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal

picture of [the claimant's] medical impairment(s)[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is defined as a:

> medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant] ... [of] a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Here, Dr. Watts is a treating source physician. Dr. Watts has served as Conn's primary care physician since late 2013. Additionally, Watts treated Conn for numerous health conditions and referred her to multiple specialists. As a result, Dr. Watts was likely in the best position to provide a longitudinal picture of Conn's medical problems and functional limitations.

Medical opinions are "judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Of course, Dr. Watts's opinions that Conn was disabled or that Conn could not work are not medical opinions that are entitled to controlling weight. Decisions about whether a claimant is disabled or is unable to work are reserved to the Commissioner by law. 20 C.F.R. § 404.1527(d); *see also, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010); *White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Still, a treating source's medical opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Thus, Dr. Watts's diagnoses and assessments of Conn's conditions were at least entitled to consideration by the ALJ, if not controlling weight. [See TR 359 (listing diagnoses of Conn's major health issues). Additionally, the record reflects that Dr. Watts treated Conn for various medical problems, including chronic pain and numbness, frequent bowel movements, incontinence, abdominal cramping, headaches, hand tremors, fatigue, joint pain, diabetes, depression, and anxiety, among other ailments. [TR 318-21, 353-54, 383-84, 445-56]. The ALJ was required to at least consider this medical evidence in his analysis.

Additionally, the ALJ is required to "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. When an ALJ denies benefits, the decision:

> must contain specific reasons for the weight given to [a] treating source's medical opinion, supported by evidence in the case record, and must be sufficiently

> specific to make clear to any subsequent reviewers the
> weight the adjudicator gave to the treating source's
> medical opinion and the reasons for that weight.

Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

Here, the ALJ has neither mentioned Dr. Watts nor referred to his medical opinions in his written decision. As a result, the ALJ has failed to provide any reason for disregarding the medical opinions of Dr. Watts. Of course, there may be good reasons for disregarding the opinions of Dr. Watts but it is impossible to make that judgment without some discussion indicating that the ALJ considered the opinions of Dr. Watts with specific reasons for the weight assigned to those opinions.

Of course, failure to provide good reasons does not automatically justify remand. Remand is not necessary when failure to provide goods reasons is a "harmless *de minimis* procedural violation." *Blakley,* 581 F.3d at 409. The Sixth Circuit has identified three situations in which such a de minimis procedural violation may occur: (1) where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," and (3) "where the Commissioner has met the goal of ... the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547.

But here, the ALJ's failure to provide good reasons does not amount to harmless error. Without more explanation it is not

possible for the Court to meaningfully review the ALJ's decision pertaining to the weight that should be given to Dr. Watts's medical opinions. Additionally, Dr. Watts's opinion is not so patently discredited by other evidence in the record that the Commissioner could not possibly assign weight to the opinion.

Moreover, in deciding to completely disregard the medical opinions of Dr. Watts, the ALJ failed to consider the *Wilson* factors. When a treating source's medical opinions are not given controlling weight, the ALJ:

> must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544; see also *Blakley*, 581 F.3d at 408.

Ultimately, the ALJ completely failed to consider the opinions of Dr. Watts, which constitutes reversible error and justifies remand. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009); *Wilson*, 378 F.3d at 545. "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545 (citing *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998)). The ALJ is not required to assign controlling weight to Dr. Watts opinions stating that Conn was disabled or Conn could not cannot work. But on remand the ALJ must consider the medical opinions

and medical evidence submitted by Dr. Watts. Finally, if controlling weight is not assigned to the opinions of Dr. Watts, the ALJ must provide specific reasons for refusing to assign controlling weight to the opinions of Dr. Watts.

**C. Whether the ALJ Erred in Finding that Ms. Conn Could Return to Her Past Relevant Work**

At step four of the sequential analysis, the ALJ found that Conn had the residual function capacity to perform a broad range of light work as defined in 20 C.F.R. § 404.1567(b). [TR 23-24]. The ALJ found that Conn could "stand and walk for four hours in an eight-hour workday and [could] sit for six hours in an eight-hour workday." [TR 24]. Additionally, the ALJ limited Conn to "frequent bilateral feeling and handling." [Id.]. "'Frequent' means occurring from one-third to two-thirds of the time." Soc. Sec. Rul. 83-10, 1983 WL 31251 at *6.

**(1) Whether Conn can return to past relevant work as actually performed**

Conn claims that ALJ's residual function capacity finding would preclude her from performing her past work as it was actually performed. [See DE 11 at 9, Page ID # 609]. Conn points out that the ALJ's residual function capacity finding is inconsistent with her reported work history information on the Work History Report Form. [See TR 222-23]. Conn reported that her past work required her to work twelve-hour shifts, eleven hours of which she was sitting. [TR 223]. Additionally, Conn reported that her past

work required her to handle, grab, grasp, write, and type for the entire twelve-hour shift. [*Id.*].

The ALJ seemed to rely heavily on the opinion of the vocational expert when he made his finding on whether Conn could perform past relevant work. [*See* TR 27]. The ALJ is correct that the vocational expert testified that Conn could perform past relevant work based on the residual function capacity assessment. But the hypotheticals that the ALJ posed to the vocational expert were both based on an eight-hour workday, not the twelve-hour workday that Conn claims she actually performed. [See TR 64-66].

Here, Conn is correct that the ALJ's conclusion that she could perform past relevant work is inconsistent with his finding on residual function capacity. Of course, the ALJ may have had a good reason to discredit or discount the information from Conn's work history report. Still, the ALJ's written decision fails to address or explain this inconsistency. On remand the ALJ must resolve the inconsistency between his residual function capacity finding, based on an eight-hour workday, and the information pertaining to Conn's past work, based on a twelve-hour workday.

**(2) Whether Conn can return to past relevant work as generally performed**

Conn also claims that she cannot return to past relevant work as generally performed because she "does not retain sufficient use of her bilateral hands for purposes of feeling and handling as is

required for a sedentary cardiac monitor." [DE 11 at 10, Page Id # 610]. Conn is correct that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Soc. Sec. Rul. 83-10, 1983 WL 31251 at *5.

But here, the ALJ did not distinguish between Conn's past relevant work as actually performed and as generally performed. [*See* TR 27]. On remand, if the ALJ finds that Conn cannot perform past relevant work as actually performed, the ALJ should consider whether Conn can perform past relevant work as generally performed.

**(3) Inconsistency between the testimony of the vocational expert and the dictionary of occupational titles**

Finally, Conn argues that the ALJ erred by failing to resolve an inconsistency between the vocational expert's testimony and the DOT. At the administrative hearing, the vocational expert testified that Conn's past work as a cardiac monitor had a DOT code of 078.365-010. [TR 63]. The ALJ cited this DOT code in his written decision when finding that Conn could perform past relevant work. [TR 27].

As Conn points out, DOT code 078.356-010 does not appear to exist. Conn persuasively asserts that the appropriate DOT code is likely 078.367-010 under the title of "cardiac monitor technician." Dictionary of Occupational Titles, 1991 WL 646826 (4th ed. 1991).

Social Security regulations require that adjudicators "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)." Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *1, 4. Here, it appears that there is a direct conflict between the DOT information provided by the vocational expert and the DOT itself. As a result, it is unclear which DOT code the vocational expert and ALJ relied on when consider whether Conn could perform past relevant work.

Additionally, this conflict amounts to more than a *de minimis* procedural or technical error. As Conn points out, DOT code 078.367-010 requires "handling" in relation to things. *See* 1991 WL 646826. Thus, if 078.367-010 applies, the ALJ must consider whether Conn's limitations with bilateral feeling and handling limit her ability to perform work as a cardiac monitor technician. As a result, on remand, the ALJ should address and resolve the inconsistency between the vocational expert's testimony and the DOT.

## V. Conclusion

Having found that the ALJ's finding on the severity of Conn's gastrointestinal issues was not supported by substantial evidence and that the ALJ committed reversible error at multiple stages of the five-step sequential analysis, the Acting Commissioner's final decision is **REVERSED** and this action is **REMANDED** for administrative

proceedings consistent with this opinion. The ALJ's finding on the severity of Conn's mental impairments is supported by substantial evidence. But on remand, the ALJ shall: 1) reconsider and provide sufficient reasons for determining the severity of Conn's gastrointestinal impairments based on the record evidence; 2) consider the opinion evidence provided by Dr. Watts and, if controlling weight is not assigned to Dr. Watt's opinions, the ALJ shall provide specific reasons for refusing to assign controlling weight to the opinion of Dr. Watts; and 3) the ALJ shall resolve inconsistencies between the residual function capacity finding and the finding that Conn can return to past relevant work, consistent with this opinion.

Accordingly, it is hereby **ORDERED** as follows:

(1) The decision of the Commissioner is **REVERSED**, with this action **REMANDED**;

(2) Plaintiff's Motion for Summary Judgment [DE 11] is **GRANTED IN PART AND DENIED IN PART**;

(3) Defendant's Motion for Summary Judgment [DE 13] is **GRANTED IN PART AND DENIED IN PART**; and

(4) Judgment reversing and remanding this matter will be entered contemporaneously herewith.

This the 5th day of November, 2018.



**Signed By:**

*Joseph M. Hood*

**Senior U.S. District Judge**